UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

                                                          Case No. 16-72983 (reg)

DOUGLAS L. MEYER and MARY V. MEYER,

                              Debtors.
----------------------------------------------------------------x
BISSETT NURSERY CORP.,

                            Plaintiff,      Adv. Proc. No. 16-08161 (reg)

vs.

DOUGLAS L. MEYER and MARY V. MEYER,

                            Defendants.
----------------------------------------------------------------x

## DECISION AFTER TRIAL

Bissett Nursery Corporation ("Plaintiff") commenced this adversary proceeding seeking to deny the discharge of Douglas L. Meyer ("Mr. Meyer") and Mary V. Meyer ("Mrs. Meyer") (collectively the "Debtors") pursuant to 11 U.S.C. § 727(a)(6)(A) for failure to comply with Fed. R. Bankr. P. 2004 requests as ordered by the Court ("2004 Order").

On January 23, 2018, a trial was held to determine whether the Debtors acted willfully and intentionally in refusing to comply with the 2004 Order based on their failure to produce documents regarding their business interests. At trial, Mrs. Meyer did not testify or otherwise present any defense for her failure to comply with the 2004 Order. Mr. Meyer attempted to justify his failure to comply with the 2004 Order by acknowledging that documents which were responsive to the 2004 Order were destroyed and no longer existed. The record reflects that many of the missing documents were shredded pre-petition, at his direction, and without review by Mr. Meyer. Mr. Meyer's explanations for why the documents were shredded are insufficient

to justify his conduct in this case, as is Mrs. Meyer's failure to provide any excuse for her failure to produce the requested documents. While objections to discharge are to be strictly construed against the party seeking to deny the granting of a discharge, the Court is mindful that the fresh start promised by the Bankruptcy Code is reserved for the honest but unfortunate debtor. Unless a debtor is transparent and forthright during the bankruptcy proceeding, the debtor is not entitled to receive a discharge. Based on the Debtors' conduct regarding the 2004 Order, the Plaintiff has met its burden of proof and the Debtors' discharge is denied under § 727(a)(6)(A).

In addition to finding that the Debtors' discharge is denied under § 727(a)(6)(A), the Court finds that there is sufficient cause to amend the complaint to conform to the evidence presented at trial regarding denial of Mr. Meyer's discharge pursuant to § 727(a)(3). The Plaintiff alleged in certain pretrial submissions that Mr. Meyer failed to preserve his financial records by shredding them, which adequately put Mr. Meyer on notice that his discharge was subject to denial for destroying records regarding his financial condition. Mr. Meyer had a fair opportunity to defend against this cause of action in responsive papers and at trial. Mr. Meyer acknowledged this conduct and testified extensively regarding the destruction of business records. Mr. Meyer impliedly consented to litigating this additional cause of action pursuant to Fed. R. Civ. P. 15(b)(2), which applies to adversary proceedings by Fed. R. Bankr. P. 7015. Further, the additional cause of action is timely as it relates back to the original pleading under § 727(a)(6)(A), which is based on the same set of facts. Thus, the complaint can be amended to add § 727(a)(3) and there is no prejudicial effect against Mr. Meyer in doing so.

The record clearly supports the finding that Mr. Meyer's discharge should be denied pursuant to § 727(a)(3), as well as § 727(a)(6)(A). In addition, Mr. Meyer disclosed further grounds at trial which could warrant the denial of his discharge based on his failure to list an

asset he sold pre-petition.  However, there is an insufficient basis to amend the complaint to conform to the evidence adduced at trial.  The Plaintiff was aware of this failure to disclose prior to the deadline to object to the discharge, yet failed to include any reference to § 727(a)(4) in the complaint or the pretrial submissions.  Counsel to Mr. Meyer consistently opposed this line of questioning at trial as outside the scope of the complaint.  Because the Court cannot conclude that there was consent or even implied consent to try this cause of action, the Court shall not consider § 727(a)(4).  Even if Mr. Meyer consented to try this cause of action, it would be untimely under Fed. R. Bankr. P. 4004(a).  Relation back would not apply as this cause of action is based on different facts than those set forth in the original complaint.

## FACTS

On July 2, 2016 ("Petition Date"), the Debtors filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code.  Mr. Meyer is currently employed as an operator for a general contracting company, but was in the landscaping business since 1969 after graduating from high school, and has owned several landscaping businesses since 1975.  Meyer Dep. 5:10-16, 6:3-7, 75, Mar. 20, 2017.  Mrs. Meyer is employed as a real estate broker.  The Debtors' bankruptcy petition states the Debtors each have 50% ownership interests in Meyer Landscape, The Little Hoe House, Inc. ("Little Hoe House"), and R & R Brett Landscape ("Brett Landscape") (collectively the "Businesses").  No. 16-72983, ECF No. 1.  The Businesses allegedly stopped doing business in January 2016, but were never legally dissolved.  Meyer Dep. 8:11-17.

The Plaintiff is a creditor of Mr. Meyer, who guaranteed an obligation of Brett Landscape.  According to the Debtors' Schedule E/F, the Plaintiff is owed approximately $425,000.00 pursuant to the guaranty.  No. 16-72983, ECF No. 1.

Although the Debtors disclosed in their bankruptcy petition that they had an interest in the Businesses, at the 341 meeting, held on August 9, 2016, Mr. Meyer disclosed that he also had an interest in another business entity known as Sagrestano-Meyer ("Sagrestano"), which was not listed in the petition. No. 16-08161, ECF No. 13, para. 4. On October 3, 2016, upon the Plaintiff's motion, the Court issued the 2004 Order directing Debtors to appear at an examination and to produce documents on or before October 24, 2016. No. 16-72983, ECF No. 18. The 2004 Order directed the production of: (a) all personal and business tax returns since 2010; (b) all financial statements pertaining to all borrowings and leases; (c) contracts that the Businesses may have had with specific entities; (d) sources and uses statements; (e) all bank statements; (f) all disbursements; (g) all mortgages and leases; (h) balance sheets since January 2010; (i) income statements since January 2010; (j) notes between the Plaintiff, Meyer, and other business entities; (k) invoices from the Plaintiff and Businesses; (l) titles for vehicles and landscaping equipment; and (m) insurance for vehicles and landscaping equipment to which the Debtors had access. No. 16-72983, ECF No. 18.

By the October 24, 2016 deadline, the Debtors had only produced their personal income tax returns since January 2010. At no point did the Debtors file a motion for a protective order related to any of the discovery sought.

On October 27, 2016, the Plaintiff filed this adversary proceeding objecting to the Debtors' discharge pursuant to 11 U.S.C. § 727(a)(6)(A) for failure to comply with the 2004 Order.[1] No. 16-08161, ECF No. 1. On December 20, 2016, the Debtors filed an answer alleging that they "delivered a box load of discovery materials" in partial compliance, and that specific job records were shredded after the Businesses ceased operations. No. 16-08161, ECF No. 6.

---

[1] The Complaint also generally notes that the Plaintiff seeks an extension of time to file objections to discharge "pursuant to Sections 727 and 523." No. 16-08161, ECF No. 1, para. 15.

The Debtors further indicated that they were attempting to compile e-discovery to further comply with the 2004 Order. No. 16-08161, ECF No. 6.

Sometime in early 2017, the Debtors turned over the corporate tax returns for the Businesses for 2011 through 2015 in compliance with the 2004 Order. Meyer Dep. 57:22-58:24. At the pretrial conference on February 6, 2017, the Court directed the Debtors to submit to 2004 examinations on March 20, 2017.

### *Rule 2004 Examination*

Mr. Meyer was examined on March 20, 2017. Mr. Meyer claims he brought additional documents with him to the examination, however, the nature of those documents is unknown and the record does not reflect the production of any documents. No. 16-08161, ECF No. 16. At the deposition, Mr. Meyer confirmed he did not produce many of the requested documents. He testified that he had difficulty finding copies of the documents because the originals were shredded. Mr. Meyer explained that he paid and directed a shredding company to remove documents from his office in January 2016 because the Businesses were no longer active and he was "cleaning the office out." Meyer Dep. 56:17-18. Mr. Meyer claimed he did not review what documents were being destroyed because he was recovering from an illness at the time the shredding took place.

Mr. Meyer further testified that he did not contact his bank or accountant to obtain replacement copies prior to the 2004 examination, nor did Mr. Meyer look through his computer for the documents. He explained that he did not think the documents were on the computer, but later acknowledged that the documents could have possibly been on the computer. Meyer Dep. 56:22-57:5.

Mr. Meyer was also uncertain as to what contracts the Businesses had entered into and which invoices had been paid. Meyer Dep. 11:11-17, 19:13-25. In addition, Mr. Meyer could not identify how much money he borrowed in loans, whether he had copies of the loan statements, or the identities of the lenders. Meyer Dep. 12:20-13:7, 32:8-23. When asked whether he could produce copies of the loan statements, invoices, or contracts that he was uncertain about, Mr. Meyer indicated that he could not because the documents had been shredded.

At the conclusion of the 2004 examination, Plaintiff's counsel again requested that Mr. Meyer produce all of the outstanding documents responsive to the 2004 Order. It was also requested that he deliver the computer to Plaintiff's counsel so that a forensic document specialist could obtain further documents. On May 19, 2017, the Debtors submitted around 350 pages of work ticket orders and employee records to the Plaintiff's counsel. No. 16-08161, ECF No. 13. None of the documents indicated whether the job was paid or profitable, or if any amount of credit was extended to the Businesses. The computer was never provided to the Plaintiff.

On November 7, 2017, the Debtors emailed additional documents to the Plaintiff's counsel, including partial income statements and balance sheets from 2015 for Brett Landscape. No. 16-08161, ECF No. 13. Mr. Meyer testified that he had initial difficulty in obtaining documents from his accountant because he is a creditor in the bankruptcy case, but the accountant eventually agreed to turn over some of the documents. Trial Tr. 48:15-49:11, Jan. 23, 2018. Mr. Meyer also contacted his bank to obtain the bank statements, but was only provided with copies for the past year and a half. Trial Tr. 50:1-10. In addition, Mr. Meyer instructed his step-daughter/office manager to search through the business computer, which was at her home,

to obtain the records on there. Trial Tr. 54:2-3, 55:3-7. The only documents produced from the computer were the project records for the Businesses. Trial Tr. 51:10-18. However, Mr. Meyer testified that as far as he knew all documents were downloaded from the computer. Trial Tr. 55:8-10.

### *Pretrial Statements*

On January 13, 2018, the Plaintiff filed its pretrial statement where it reiterated that Debtors' discharge should be denied pursuant to § 727(a)(6)(A). The Plaintiff also alleged for the first time that the discharge should be denied pursuant to § 727(a)(3)[2] because Mr. Meyer shredded his business records and failed to preserve them. Plaintiff also included a reference to § 523(a)(4)[3], but reserved the right to bring that specific claim in the event that the Court denied the Plaintiff's current objection.

In the Debtors' pretrial statement, filed on January 17, 2018, they acknowledge having difficulty in providing the requested documents due to Mr. Meyer's destruction of the corporate documents. However, the Debtors only explicitly addressed the question of whether the discharge should be denied pursuant to § 727(a)(6)(A), the count alleged in the Plaintiff's complaint.

---

[2] Section 727(a)(3) states:
    The court shall grant the debtor a discharge, unless—
    (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

[3] Section 523(a)(4) states:
    A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
    (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

*Trial*

Mr. Meyer testified at trial, but Mrs. Meyer was not called as a witness by either side. At the trial, Mr. Meyer also produced the automobile titles and insurance, project records from 2009-2012, and the 2013-2015 financial statements for Brett Landscape and Little Hoe House.

Mr. Meyer acknowledged receiving the 2004 Order, being aware that he had to comply within three weeks, and having discussions with his attorney regarding the production of those documents. Trial Tr. 44:15-22, 45:11-15, Jan. 28, 2018. Mr. Meyer testified that he produced the tax statements, financial statements, bank statements, balance sheets, income statements, and proof of insurance and title to the company vehicles. Mr. Meyer stipulated that he did not produce contracts for jobs, sources and uses statements, mortgage and leases, notes and correspondences between the Plaintiff and the Businesses, and invoices/statements related to the Plaintiff. He explained that his failure to comply with the 2004 Order was a result of the trouble he had obtaining documents from third parties and the fact that he shredded almost all of the documents for the Businesses.

        *(i)      Shredding of the Documents*

Mr. Meyer testified that his business operations were not fully computerized, and he was unable to produce the remainder of the documents because he shredded all of his business records. Trial Tr. 51:3-5. Mr. Meyer explained that the Businesses were inactive as of January 2016 because he became ill and was not getting paid on the Business accounts. Trial Tr. 40:24-41:2. He claimed that a "great volume" of documents were stored in his office, but he had no place to store the material at another more permanent location. Trial Tr. 41:21-42:2. Thus, according to Mr. Meyer, he had no options other than to shred the bulk of the documents. Trial Tr. 43:12-22. At trial, when asked about the timing of the document destruction, Mr. Meyer

changed his prior deposition testimony and stated the documents were actually shredded in April 2016.

Mr. Meyer acknowledged being aware of his obligation to reproduce the shredded documents and testified that he made every attempt to reproduce them. Trial Tr. 48:9-14. Ultimately, Mr. Meyer did reach out to his accountant, the bank, and his office manager to obtain some of the missing documents. Thus, Mr. Meyer contended that he produced a majority of the records requested from him. Trial Tr. 55:22-24. However, the record reflects that Mr. Meyer failed to obtain copies of the invoices from the contractors he did business with. Mr. Meyer acknowledged that those contractors were still in business, yet failed to explain why he did not seek these invoices. Trial Tr. 57:14-17. Furthermore, Mr. Meyer could not definitively state which documents were destroyed and whether the shredded records would have been relevant to the 2004 Order. Trial Tr. 56:12-16.

> *Q: Exactly what documents were shredded at that time?*
> *A: Basically everything that was in the office.*
> *Id.* at 20:21-22.

***

> *THE COURT: Did you look at any documents before they were shredded?*
> *THE WITNESS: I was not there.*
> *Id.* at 42:12-14.

***

> *THE COURT: So you have no idea whether there were documents there that may or may not have been material to this case?*
> *THE WITNESS: No.*

*Id.* at 42:19-22.

When questioned on the financial statements, which showed various deposits made to Little Hoe House, Mr. Meyer was unable to explain what the transfers were for or where the money came from. In addition, when questioned on the money advanced by the Plaintiff and whether it was repaid, Mr. Meyer could not remember the exact amounts, and could not provide any records to show the exact figures. Trial Tr. 24:18-25:7.

      *(ii)*      *Ownership Interest in Sagrestano*

Mr. Meyer was also questioned regarding his interest in a real estate company known as Sagrestano. Mr. Meyer disclosed that Sagrestano is now owned by Frank and Leo Sagrestano. Trial Tr. 35:9-12. However, Mr. Meyer previously owned 50% of the company, which over time decreased to 25%. Trial Tr. 38:11-12. In 2015, Mr. Meyer sold his Sagrestano stock in exchange for an undisclosed sum. Trial Tr. 36:4-7. He explained that the sum was not significant and he acknowledged that he did not disclose any of this information in his bankruptcy petition. Trial Tr. 36:6-37:3.

When questioned as to why he failed to disclose his interest in the company, Mr. Meyer explained that he did not own Sagrestano at the time of the bankruptcy filing, and did not know he had to disclose that interest or the proceeds he received from the sale of his stock. Trial Tr. 34:22-25; 36:23-37:5.

At the conclusion of trial, the Court urged the parties to file papers covering Mr. Meyer's interest in Sagrestano, but ultimately left the decision for the parties involved. The parties declined to do so.

## DISCUSSION

### A. DENIAL OF DISCHARGE PURSUANT TO § 727(A)(6)

#### a. *Legal Standard*

Pursuant to Section 727(a)(6)(A)

The court shall grant the debtor a discharge, unless—

(6) the debtor has refused, in the case—
(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify.

Whether to deny a debtor's discharge under this subsection is subject to the discretion of the court. *Weiss v. Winkler,* No. 98–CV–5742, 2001 WL 423050, at *3 (E.D.N.Y. Mar. 30, 2001). Under § 727(a)(6)(A), a plaintiff has the initial burden to prove that the court issued an order and that the debtor refused to obey that order. *Hirsch v. Hirsch* (*In re Hirsch*), Adv. Pro. No. 07–01139–dem, 2009 WL 3297278, at *6 (Bankr. E.D.N.Y. Oct. 13, 2009). However, "the word 'refused' requires more than a technical violation of a court order." *Adar 990 Realty LLC v. Sofer (In re Sofer)*, 519 B.R. 28, 35 (Bankr. E.D.N.Y. 2014). "[T]he party seeking [denial of discharge] must demonstrate some degree of volition or willfulness on the part of the debtor." *Pereira v. Gardner (In re Gardner)*, 384 B.R. 654, 670 (Bankr. S.D.N.Y. 2008) ("A mere failure to obey the order, resulting from inadvertence, mistake, or inability to comply, is insufficient.").

Once the plaintiff meets its burden of showing that the debtor failed to comply with a court order, the burden of production then "shifts to the debtor to either justify the violation or prove that the violation did not in fact occur." *In re Sofer*, 519 B.R. at 35. Ultimately in determining whether a violation of an order warrants denial of discharge, the court should consider (1) the detriment to the proceedings versus the harm to the debtor; (2) the intent behind the acts such as whether they were willful or there was a justifiable excuse; (3) the injury to the

creditors; and (4) whether the debtor could make amends. *In re Kokoszka*, 479 F.2d 990, 997-98 (2d Cir. 1973), *aff'd sub nom. Kokoszka v. Belford*, 417 U.S. 642 (1974).

### b. *Analysis*

The Plaintiff argues that the Debtors' discharge should be denied under § 727(a)(6)(A) because they failed to comply with the 2004 Order. Both Mr. and Mrs. Meyer were named parties in the 2004 Order and were instructed by the Court to comply with the 2004 Order after the deadline to comply had passed. It is undisputed that both Debtors received the 2004 Order and failed to turn over many of the requested documents. In fact, Mr. Meyer conceded at trial that he did not provide the documents requested in subsections (c), (d), (g), and (h) of the 2004 Order. Thus, the burden shifts to the Debtors to justify their noncompliance.

At trial, Mr. Meyer explained that he was unable to produce several of the documents because they were destroyed when he closed the Businesses. Mr. Meyer expressed the great difficulty he had in gathering copies of the documents that were destroyed, and stressed his efforts to partially comply with the 2004 Order. His sole justification for his violation of the 2004 Order is that there were no available copies to produce. However, this defense of "impossibility" is only applicable "where, after using due diligence, the person, *through no fault of their own*, is unable to comply with the court's order." *Graham v. Knott (In re Knott)*, Nos. 12-3027, 11-32473, 2013 WL 1314989, at *15 (Bankr. N.D. Ohio March 28, 2013) (emphasis added). The impossibility of obtaining the records in this case was a result of Mr. Meyer's own wrongdoing. He acknowledged that merely two months prior to the Petition Date, he directed and paid a shredding company to destroy all of the documents for the Businesses in his office. Thus his inability to comply with the 2004 Order is not justifiable or excusable.

In addition, Mrs. Meyer also failed to meet her burden of offering a justifiable excuse for her noncompliance. Not only was Mrs. Meyer named in the 2004 Order, but she was also a 50% owner of the Businesses. Therefore, she had a duty to comply with the 2004 Order and produce the requested documents. However, Mrs. Meyer did not testify at trial nor did she offer a separate explanation for her failure to comply with the 2004 Order. Because Mrs. Meyer provided no justifiable explanation for her noncompliance, her discharge will also be denied pursuant to § 727(a)(6)(A).

The Debtors' failure to produce these documents has a significant detrimental effect on the Plaintiff. Based on the few financial statements provided, the Plaintiff alleges that there was a pattern of diverting business funds for personal use by the Debtors. No. 16-08161, ECF No. 13. When asked at trial to explain those transfers, Mr. Meyer was unable to give an explanation. The lack of documentation affects the Plaintiff's ability to determine whether the Businesses received any money on each job it was contracted for; thus, preventing the Plaintiff from determining whether it can and should pursue Article 3-A Lien Law claims against any of the project owners. No. 16-08161, ECF No. 13. Although Mr. Meyer attempted to obtain the remaining documents, his acts were insufficient because there is no documentation to give the Plaintiff a clear overview of the Debtors' business transactions and full financial situation.

Therefore, this Court finds that the conduct of both Debtors warrants denial of their discharge pursuant to § 727(a)(6)(A).

## B. OTHER CAUSES OF ACTION

### a. *Amendment of Pleadings*

While the complaint only contains one count seeking denial of the Debtors' discharge under § 727(a)(6)(A), the Court shall consider whether there are sufficient grounds to amend the

pleadings to conform to the evidence adduced at trial. In the pretrial statement, the Plaintiff raised § 727(a)(3) as a basis to deny the Debtors' discharge, and this claim was also raised at trial.[4] Additional testimony was also elicited at trial regarding Mr. Mayer's failure to disclose an asset in the petition, which could constitute grounds to deny Mr. Meyer's discharge pursuant to § 727(a)(4).

Fed. R. Civ. P. 15(b)(2), which applies to adversary proceedings by Fed. R. Bankr. P. 7015, allows the trial of an issue that is not raised in the pleadings by the parties' express or implied consent. A court "may infer consent when the non-movant has failed to object to evidence introduced at trial." *Ackerman v. Pilipiak (In re Marine Risks, Inc.)*, 441 B.R. 181, 198 (Bankr. E.D.N.Y. 2010). "[T]he court must also determine whether the non-movant would be prejudiced by the opposing party's request for amendment." *Id.* Prejudice will be found if the amendment results in a disadvantage to the non-movant when presenting its case. *Id.*

If it is appropriate to amend the complaint to add these additional claims, the Court must then consider whether the claims would relate back to the original complaint under Fed. R. Civ. P. 15(c), which applies to adversary proceedings by Fed. R. Bankr. P. 7015. If not, then the additional claims would be time barred under Fed. R. Bankr. P. 4004(a). If the original pleading adequately identifies the factual circumstances out of which the amended claim arises, then relation back would apply. *Flexi-Van Leasing, Inc. v. Perez (In re Perez)*, 173 B.R. 284, 290 (Bankr. E.D.N.Y. 1994) (other citations omitted).

---

[4] While the Plaintiff referred to § 523(a)(4) in its pretrial statement, it merely served as a reservation of right to raise the claim if the Court found that sufficient documentary evidence was provided to sustain a cause of action under this section. No. 16-08161, ECF No. 13. Because there was no testimony at trial that corresponds to the elements of § 523(a)(4), the Court will not consider this cause of action.

### i. *Adding § 727(a)(4) to the Complaint*

While Mr. Meyer disclosed grounds at trial which could warrant the denial of his discharge based on his failure to list an asset he sold pre-petition, there is no basis to amend the complaint to conform to the evidence adduced at trial. The Plaintiff was aware of this failure to disclose prior to the deadline to object to the discharge, yet failed to include any reference to § 727(a)(4) in the complaint or the pretrial submissions. In addition, counsel to Mr. Meyer opposed this line of questioning at trial several times as outside the scope of the complaint. Therefore, the Court cannot conclude that there was consent or even implied consent to try this issue. Furthermore, this cause of action does not relate back to the original complaint as it is based on different facts than those set forth therein.

### ii. *Adding § 727(a)(3) to the Complaint*

With regard to § 727(a)(3), Mr. Meyer had a fair opportunity to defend this claim, as it was raised at the pretrial conference, in the pretrial statement, and addressed again at trial. Mr. Meyer failed to respond to the Plaintiff's allegation in the pretrial statement, and answered many questions at trial, without objection, regarding the shredding of the Business documents. In addition, Mr. Meyer's counsel further inquired into the shredding of the documents on cross examination. Mr. Meyer is not prejudiced by the addition of this claim since he had ample notice and opportunity to defend against this cause of action. Furthermore, the claim is timely under the theory of relation back as it sufficiently relates to the conduct described in the complaint. It was the shredding of the documents which led in part to Mr. Meyer's failure to comply with the 2004 Order. These events are not based on different facts than those set forth in the complaint, and Mr. Meyer was sufficiently put on notice of the conduct to which the

amendment pertains. Therefore, there is sufficient cause to amend the complaint to consider whether Mr. Meyer's discharge should be denied under § 727(a)(3) as well.

### b. *Denial of Discharge Pursuant to § 727(a)(3)*

i. *Legal Standard*

Pursuant to Section 727(a)(3)

The court shall grant the debtor a discharge, unless—

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

The purpose of this section is to ensure that the trustee and creditors have sufficient information "to trace the debtor's financial history, to ascertain the debtor's financial condition, and to reconstruct the debtor's business transactions." *See Agai v. Antoniou (In re Antoniou)*, 527 B.R. 71, 78 (Bankr. E.D.N.Y. 2015) (quoting *Schackner v. Breslin Realty Dev. Corp.*, No. 11-CV-2734, 2012 WL 32624, at *4 (E.D.N.Y. Jan. 5, 2012)).

To prevail on this claim, the Plaintiff has the burden of proving either: (1) that the debtor failed to maintain adequate records, or (2) that this failure makes it impossible to discern the debtor's true financial condition or the nature of any business transactions that occurred shortly prior to filing. *State Bank of India v. Sethi (In re Sethi)*, 250 B.R. 831, 838 (2000). The "adequacy" of a debtor's recordkeeping is measured by the following non-exhaustive *Sethi* factors: (1) whether the debtor was engaged in business, and if so, the complexity and volume of the business; (2) the dollar amount of the debtor's obligations; (3) whether the debtor's failure to keep or preserve books and records was due to the debtor's fault; (4) the debtor's education, business experience, and sophistication; (5) the customary business practices for record keeping in the debtor's type of business; (6) the degree of accuracy disclosed by the debtor's existing

16

books and records; (7) the extent of any egregious conduct on the debtor's part; and (8) the debtor's courtroom demeanor. *Id.*

The burden then shifts to the debtor to justify his deficiencies. *In re Sethi*, 250 B.R. at 839. The explanation of loss must be more than vague, general assertions that the records are no longer available, and the debtor cannot supplement the financial information by oral testimony. *Id.* The acceptability of the debtor's justification "depends largely on what a normal, reasonable person would do under similar circumstances." *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 235 (2d Cir. 2006) (citing *Meridian Bank v. Alten*, 958 F.2d 1226, 1231 (3d Cir. 1992)). The court should consider the debtor's education, experience, the sophistication of the debtor's business, the debtor's personal financial structure, and any special circumstances that may exist. *Krohn v. Cromer (In re Cromer)*, 214 B.R. 86, 99 (Bankr. E.D.N.Y. 1997).

    ii. *Analysis*

The Plaintiff argues that Mr. Meyer's discharge should be denied under § 727(a)(3) because he failed to preserve and maintain his business records, thus making it impossible to ascertain the business transactions prior to the bankruptcy filing. The Court finds that the Plaintiff has satisfied its burden under either standard.

The Court first analyzes the *Sethi* factors. The record reflects that Mr. Meyer was engaged in several landscaping businesses, and that Mr. Meyer personally guaranteed loans for Brett Landscape's debts. According to the petition, the total liabilities Mr. Meyer seeks to discharge in this case is at least $956,257.49. No. 16-08161, ECF No. 1. Turning to the third factor, Mr. Meyer acknowledged that his failure to preserve the documents was a result of his own wrongdoing. He testified that he hired and paid a company to destroy all of the documents without first reviewing them. With respect to the fourth factor, Mr. Meyer is an experienced

businessman.  While Mr. Meyer only has a high school education, he was in the landscaping business since the 1960s and a business owner since 1975.

As to the fifth factor, there is no evidence in the record that addresses the customary practice for record keeping in the landscape business industry.  However, even applying the lowest threshold for business and personal record-keeping, Mr. Meyer fails.  Mr. Meyer does not dispute that he destroyed almost all of the corporate documents, despite the fact that the Businesses were never legally dissolved.  In addition, Mr. Meyer did not produce any personal bank and financial statements to explain the Businesses' transactions.  With respect to the sixth factor, Mr. Meyer had only turned over his personal and business tax returns five months after entry of the 2004 Order.  By the trial date, the Debtor had produced a few more documents, including financial statements, bank statements, income statements, title and insurance.  Yet, even some of those documents were not fully complete. The records Mr. Meyer did keep and turn over shed little light on his financial condition or his business transactions.  For all these reasons, the Court concludes that Mr. Meyer failed to preserve sufficient information because it is impossible to discern the nature of Mr. Meyer's financial condition or nature of his business transactions.

At this point, the burden shifts to Mr. Meyer.  His justifications are two-fold.  First, he contends that the documents were shredded because the Businesses were no longer active and he did not have sufficient space to store the documents.  He explained that he did not review the documents prior to shredding because he was recovering from an illness and was not present at the time.  However, the Businesses were never legally dissolved.  Furthermore, Mr. Meyer could have directed Mrs. Meyer or his office manager to preserve documents in his absence.  Thus, Mr. Meyer's explanations are insufficient as a matter of law.

Second, Mr. Meyer contends that the Plaintiff demanded extensive documentation within a short amount of time in an effort to "stimulate anticipated failure." No. 16-08161, ECF No. 16. However, he had several opportunities to produce the documents. A year after the 2004 Order was entered, Mr. Meyer had still failed to produce substantially all of the requested documents. Despite being afforded an opportunity to demonstrate a reason for his actions, the Debtor failed to establish that such failure was justified under the circumstances. Therefore, Mr. Meyer's discharge shall also be denied pursuant to § 727(a)(3).

## CONCLUSION

For all of the forgoing reasons, the Court shall enter judgment in favor of the Plaintiff denying the Debtors' discharge pursuant to § 727(a)(6)(A). In addition, Mr. Meyer's discharge is denied pursuant to § 727(a)(3).

The Court will enter a judgment consistent with this Memorandum Decision.



**Dated: Central Islip, New York**　　　　　　　　　　**Robert E. Grossman**
**April 9, 2018**　　　　　　　　　　　　　　　　　**United States Bankruptcy Judge**